## UNITED STATES OF AMERICA, Plaintiff
## v.
## DUMEL MAUVAIS, Defendant

Crim. No. 1996-105

District Court of the Virgin Islands

Div. of St. Thomas and St. John

December 4, 1996

WARREN WILLIAMS, ESQ., IVER STRIDIRON, ESQ., *for Plaintiff*

STANLEY DEJONGH, ESQ., (Assistant United States Attorney), *for Defendant*

MOORE, *Chief Judge*

## MEMORANDUM OPINION

Dumel Mauvais ["Mauvais"] has moved to suppress certain statements made to agents of Immigration and Naturalization Services ["INS"] because of alleged violation of the rules set forth in *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966). An evidentiary hearing was held on October 4, 1996. For the following reasons, this Court will grant in part defendant's motion and suppress some statements made at the scene of the incident. However, the Court will not suppress, and the government may use as evidence, defendant's signed statement as well as certain other oral statements.

### Facts

On or about April 8, 1996, officers of the Immigration and Naturalization Services were called to the area of Estate Tabor and Harmony in St. Thomas. A witness had observed a person later identified as the defendant, Dumel Mauvais, picking up individuals who appeared to have been dropped off by a boat and transporting them from the area in a black Honda. When the immigration officers arrived at the scene, the defendant was being detained by local police officers.

Special Agent for the INS, Ellington Hodge ["Hodge"] approached the defendant and questioned him about his citizenship and status in the United States. Mauvais produced documents indicating that he is a permanent legal resident. The defendant was then questioned on his reason for being in the area, to which he responded he was waiting for a ride to work from a friend who lived in the Smith Bay area. Mauvais then agreed to go with Hodge and and another officer to this friend's house in the INS' van.

During the questioning of the defendant at the scene, another INS agent, Kirk Thomas was across the street getting information from the witness who had observed the illegal aliens being picked up. This witness told Thomas that the man across the street, pointing to Dumel Mauvais, was the man she saw transporting individuals who appeared to be aliens in a black Honda. The fact that the witness had positively identified Mauvais was not relayed to Hodge at the time he was talking to Mauvais before taking a ride in the van.

331

When Hodge drove the defendant to Smith Bay, Mauvais' friend was not at home. Hodge and Mauvais then proceeded to the defendant's residence in Estate Tutu, where they found a woman and two minor children who were in the United States illegally. The woman was taken into custody and driven back to Estate Tabor and Harmony in the van with the défendant.

Upon arriving back at Estate Tabor and Harmony, Hodge was informed that the vehicle identified by the witness as being used to transport the unknown persons had been discovered parked down the road. When Hodge asked Mauvais if he owned the vehicle, he pulled keys out of his pocket and admitted that the car was his. Agent Hodge then orally advised the defendant of his *Miranda* rights, which he appeared to understand. After Mauvais was advised of his rights, he again indicated that the car was his, and he was transported to the INS office at the Federal Building for processing. At the office, Mauvais was again advised of his rights and he signed a form stating that he did not wish to have a lawyer present and was willing to answer questions. He then signed a sworn statement admitting that he had transported illegal aliens.

### Discussion

Mr. Mauvais argues that all of his statements made at the scene of the crime before and after he was orally advised of his rights, as well as his sworn statement taken at the immigration office, should be suppressed. The defendant argues that the statements made at the scene before any rights were given violated his constitutional rights because the questioning was equivalent to custodial inter-rogation. He further argues that any statements made after the oral and written rights were administered must also be suppressed as somehow tainted by the original violation.[1] The Court agrees that

---

[1] Defense counsel did not articulate the basis for suppressing the statements made after the defendant was advised of his rights and signed a written waiver at the INS office. Defense counsel merely argued after the hearing that, "from the time [the INS officers] walked up to [Mauvais] and started questioning him, any questions, he was supposed to have been advised of his constitutional rights, and he was not. Anything that transpired after that should be suppressed, Judge." [Tr. at 83.] The defendant did not contend that he was never advised of his rights. He testified that he was advised of his rights when he was questioned at the INS office. He only disputed when he was first advised of his rights. Hodge testified that Mauvais was first advised of his rights at the

the statements made in response to questioning before the defendant was advised of his rights must be suppressed. However, any oral and written statements made after the defendant was orally advised of his rights and after he signed a written advice of rights form waiving his rights will not be suppressed.

■ *Miranda* imposes affirmative obligations only in the context of custodial interrogation. Failure to administer *Miranda* warnings during questioning of a suspect when that suspect is not in custody does not violate *Miranda*. Whether a defendant was in custody at the time of questioning is determined on a case-by-case basis. *Patterson v. Cuyler*, 729 F.2d 925, 930 (3d Cir. 1984); *United States v. Mesa*, 638 F.2d 582, 584 (3d Cir. 1980). Absent a formal arrest, a suspect is in "custody' when the government has in some meaningful manner imposed a significant restraint on a suspect's freedom of action. *Yount v. Patton*, 710 F.2d 956, 961 (3d Cir. 1983) "(Something must be said or done by the authorities, either in their manner of approach, or in the tone or extent of their questioning which indicates that they would not have heeded a request to depart."), *rev'd on other grounds*, 467 U.S. 1025, 81 L.Ed. 2d 847, 104 S. Ct. 2885 (1984). The mere fact that a person is suspected by the police as the perpetrator of the crime does not automatically render any questioning 'custodial interrogation'. *Id.* at 960 ("It is police compulsion, and not the strength of police suspicions, which places a suspect in custody.").

■ The actions of special agent Hodge and circumstances surrounding the initial questioning of the defendant lead the Court to conclude that he was not free to leave and thus was in 'custody' for purposes of *Miranda* at the time he was first approached in Estate Tabor and Harmony. The evidence presented at the hearing indicates that Mauvais was being detained by local police authorities even before he was questioned by Agent Hodge. In addition, when the defendant was driven to his friend's house in Smith Bay and his residence in Estate Tutu, he was seated in the back of the agents' van which has bars and no door handles. Moreover, Hodge agreed with defense counsel that Mauvais was detained from the

---

scene of the crime. The Court credits the testimony of Hodge concerning when the defendant was orally advised of his rights.

moment Hodge approached him. [Tr. at 31.] The following exchange between defense counsel and agent Hodge also supports the conclusion that the defendant was not free to go:

Q. At some point during that period of time [during the initial questioning at the scene], am I correct, that Mr. Mauvais was not free to walk away from the authorities; that is, you had stopped him and you had in effect detained him, based on what [the witness] said; is that correct sir?

A. No, sir.

Q. Are you saying that Mr. Mauvais could have walked away?

A. No. I'm saying that he wasn't stopped and questioned based on what [the witness] had said, because at that point I did not know what [the witness] had said.

. . . .

Q. At any time after Immigration approached Mr. Mauvais at Estate Tabor and Harmony, was he at any time free to leave?

A. If he had requested to leave, a decision would have been made at that point.

[Tr. at 32-34].

From the above, it is clear that agent Hodge did not claim that the defendant was in fact free to leave, but implied that the decision could have been that the defendant was not free to leave. Mr. Mauvais testified that in fact he did not feel that he was free to leave. [Tr. at 62.] Mauvais stated that they took his green card and did not return it at the time of the initial questioning. Accordingly, because the Court finds from these circumstances that Mauvais was in custody from the time he was approached by the immigration officers, any statements made before being administered his *Miranda* rights must be suppressed.

Defendant claims that all of the statements he made must be suppressed, including statements made after he had signed a written waiver of his rights. Presumably the basis for this argu-

ment is that the statements made after the warnings were administered are fruits of a poisonous tree.[2] A variation of this theory is the "cat out of the bag" theory, which is premised on the idea that once a person has made damaging admissions without the benefit of *Miranda* warnings, any subsequent statements are also tainted because the person is psychologically compelled to make admissions having already confessed.

■ Suppression of statements made after proper *Miranda* warnings are given, however, is not necessary when the earlier statements were suppressed due to a technical *Miranda* violation and were not actually statements that were compelled or coerced in violation of a defendant's constitutional rights. Absent proof that the earlier statement was actually coerced or compelled, the United States Supreme Court has not required the suppression of a properly Mirandized confession just because the police had obtained an earlier, unwarned and therefore suppressible statement from the defendant. *Oregon v. Elstad*, 470 U.S. 298, 84 L. Ed. 2d 222, 105 S. Ct. 1285 (1985). In Elstad, the defendant made a confession to a police officer at his home without having been advised of his *Miranda* rights. The defendant was then taken to police headquarters, given proper *Miranda* warnings and questioned further. The Court declined to suppress the statements made as a result of the properly warned questioning on the "cat out of the bag" theory.

> We must conclude that, absent deliberately coercive tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion. A subsequent administration of *Miranda* warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement. In such circumstances, the finder of fact may reasonably conclude that the suspect made a rational and intelligent choice whether to waive or invoke his rights.

470 U.S. at 314.

---

[2] See *supra* note 1.

■ In this case there is no evidence that any of the oral statements were coerced or compelled from the defendant. Agent Hodge testified that there were was no intimidation or any hostile demeanor or actions by the immigration officers. [Tr. at 17]. There are no allegations that Mauvais' age or intelligence made him particularly vulnerable to having his will overborne by any of the officers during the questioning. Accordingly, there are no facts to support any contention that the questioning was unconstitutionally coercive even though it was in violation of *Miranda* . Thus the statements made by the defendant after being orally advised of his rights as well as the written statement given at the immigration office may be used by the government. An appropriate order is attached.

ENTERED this 4th day of December, 1996.

### ORDER

For the reasons set forth in the accompanying memorandum, it is hereby

ORDERED that defendant's motion to suppress as it relates to statements made to the immigration officers before any *Miranda* warnings were given is hereby GRANTED; and it is further

ORDERED that defendant's motion to suppress as it relates to statements made after the defendant was orally advised of his rights, including his written statement made at the immigration office is hereby DENIED; and it is further

ORDERED that jury selection will commence on Monday, January 13, 1997.

ENTERED this 4th day of December, 1996.